IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JOHNATHAN WILSON                                                                                      PLAINTIFF

      v.                              Civil No. 3:23-cv-03018-TLB-MEF

SHERIFF ROY MARTIN,
Boone County, Arkansas; and
NURSE JODY WOODS                                                                                   DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Johnathan Wilson ("Wilson"), filed this civil rights action under 42 U.S.C. § 1983. Wilson proceeds *pro se* and *in forma pauperis* ("IFP"). The claims at issue in this case arose while Wilson was incarcerated in the Boone County Detention Center ("BCDC"). While housed at the BCDC, Wilson contends Defendants violated his federal constitutional rights by failing to provide masks to stop the spread of COVID-19, failing to provide adequate medical care, and failing to protect him against the spread of COVID-19 resulting in his testing positive. Wilson maintains he suffers from long-term effects. Wilson has sued the Defendants in both their individual and official capacities.

Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making this Report and Recommendation on the Joint Motion for Summary Judgment on the issue of exhaustion, brief, and statement of undisputed facts filed by the Defendants. (ECF Nos. 30-32). At the request of the Court, Defendants filed a Supplemental Motion for Summary Judgment.

1

(ECF No. 38). Wilson has responded to both the original and supplemental motions. (ECF Nos. 34 & 43). The Motions are ready for decision.

## I. BACKGROUND

In his Complaint, Wilson asserts three separate claims. (ECF No. 1). In Claim One, Wilson maintains Defendants failed to provide masks during the COVID-19 pandemic, resulting in his contracting the virus. *Id.* at 4-5. Further, he contends the 14-day mandatory quarantine was not enforced as far as the staff members were concerned. *Id.* at 5.

In Claim Two, Wilson alleged TurnKey Health Clinics, LLC ("TurnKey") failed to provide adequate medical care for COVID-19 and for the long-terms problems he suffered because of contracting the virus. (ECF No. 1 at 5-6). Wilson also maintained TurnKey was responsible for the actions or inactions of its employees. *Id.* at 6. However, Wilson has voluntarily dismissed his claims against TurnKey. (ECF Nos. 44 & 45). Claim Two is therefore no longer at issue.

In Claim Three, Wilson alleges that Defendant Woods denied him proper medical care and medications. (ECF No. 1 at 8). Wilson again mentions that he is suffering from long-term effects of COVID-19. *Id.*

As relief, Wilson seeks both compensatory and punitive damages. (ECF No. 1 at 9). As one component of his request for damages, Wilson seeks to recover for other unforeseen damages he may suffer in the future because he contracted the COVID-19 virus. *Id.*

## II. APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Defendants have moved for summary judgment on the issue of exhaustion. Defendants maintain Wilson failed to exhaust his administrative remedies with respect to each of his three claims.

### A. The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).

### B. The BCDC Grievance Procedure

Boone County Sheriff's Department has a grievance policy and procedures. (ECF No. 32-4 at 2-3). The policy provides: "It is the policy of this agency that detainees shall have the opportunity to present written grievances without punishment. Written grievances shall be promptly investigated promptly answered in writing and if legitimate, satisfactorily resolved." *Id.* at 2.

The procedures are:

4

a. Form
   1) A grievance form may be obtained from any Detention Officer upon request.

b. Substance.
   1) The detainee must clearly describe all facts and all request[s], then give grievance to any Detention Officer.

c. Delivery
   1) The grievance is given to any staff member for delivery to the appropriate personnel without altercation or sharing with inappropriate personnel.

d. Review
   1) Grievance will be reviewed immediately to determine urgency.

e. Resolution
   1) Absent of emergency, the grievance is investigated and if valid, resolved within a reasonable amount of time.
   2) Valid emergencies receive immediate attention.

f. Response
   1) Whether with or without merit, the grievant is informed of the disposition of the grievance, in writing, within ten (10) working days of the date the grievance was received.
   2) Emergency grievances receive a response within 48 hours of the time the grievance is received.
   3) The factual basis for the disposition is stated in the response.

g. Appeals
   1) The grievant may appeal any response or lack of response to the Sheriff or Jail Administrator who shall respond in writing. Appeals to the Sheriff or Jail Administrator may be delivered in the same manner as above or may be mailed to the Sheriff or through a third party for delivery to the Sheriff or Jail Administrator.
   2) If for any reason a detainee fears use of the grievance procedure, the detainee[']s grievance may be presented to the Jail Administrator or Sheriff for appeal.

h. Records
   1) All grievances and responses, dated and signed are placed in the jail file. The original into the file and a copy returned to detainee, signed and dated by responding officer.

(ECF No. 32-4 at 2-3).

### C.  Claims One and Three

As a preliminary matter, § 1997e(a) clearly applies here: (1) Wilson was incarcerated at the BCDC at the time he filed his Complaint; and (2) the factual predicate of his claims stem from his conditions of confinement at the BCDC.   42 U.S.C. § 1997e(a).

The Court turns to the question of whether Wilson exhausted his administrative remedies prior to filing suit.  According to the BCDC Assistant Jail Administrator, Jason Silva, Wilson submitted 36 requests and grievances between August 5, 2021, when he was booked in, and March 4, 2023, the date he signed his Complaint.  (ECF No. 32-1 at 1; *see also* ECF No. 32-2 at 1 (booking sheet); ECF No. 1 at 11 (signature date)).   The attached 30 pages of requests and grievances all appear to have been submitted in a computerized form.  (ECF No. 32-3).   The Court agrees with Defendants that Wilson did not submit in computerized from any grievances regarding Claims One through Three.

In response, however, Wilson indicates that none of his handwritten requests or grievances are contained in the Defendants' exhibit.   Furthermore, Wilson points out that his January 1, 2023, request for a mask is marked "escalated," but no response is made.  (ECF No. 32-3 at 11). Wilson argues he cannot appeal if no answer is given.

Clearly, the BCDC's grievance policy contemplates grievances being filed in "paper" rather than in computerized form.  (ECF No. 32-4 at 2-3).   For this reason, the Court required Defendants to file a supplemental motion on the issue of written grievances submitted by Wilson. (ECF No. 37).

In Defendants' Supplemental Motion for Summary Judgment, they provide the affidavit of Sgt. Rebecca Spillman ("Sgt. Spillman") which addresses the issue of handwritten grievances. (ECF No. 38 at 2). By affidavit, Sgt. Spillman indicates she located one handwritten grievance in Wilson's jail file. (ECF No. 38-1 at 1). Sgt. Spillman states that inmates on disciplinary lockdown are allowed to request handwritten grievance forms as they have no access to a kiosk. *Id.* "Otherwise, inmates are directed to file grievances on the kiosk." *Id.*

According to Sgt. Spillman, generally "inmates that were contained within quarantine pods still had access to kiosks and would have been able to file grievances." (ECF No. 38-1 at 2). Sgt. Spillman is "not aware of a practice or policy of providing handwritten grievance forms to inmates on quarantine for COVID-19 related reasons." *Id.* The attached handwritten grievance concerns Wilson's period of lockdown which he believed was too harsh. (ECF No. 46-1).

Wilson argues he was prevented from appealing his grievances because there were no responses to requests and grievances contained on pages 1-8, 10-11, 19, and 22 of ECF No. 32-3. According to Wilson, "there is no option to appeal that which wasn't answered." (ECF No. 43 at 2). Wilson asserts Defendants are not following their own grievance procedure, which requires grievances to be responded to within 10 working days of receipt.

This argument is without merit. First, none of these grievances address the claims at issue. Second, an appeal is not mandatory under the BCDC grievance policy. *See* ECF No. 32-4 at 3 ("The grievant **may** appeal") (emphasis added). Third, the grievance procedure clearly provides that a grievant may appeal the lack of response to the jail administrator or the sheriff. (ECF No. 32-4 at 3). It provides that the appeal "may be delivered in the same manner as above or may be

7

mailed to the Sheriff or a third party for delivery to the Sheriff or Jail Administrator." *Id.* at 3. Wilson could have appealed the lack of response by mail even if there was no option on the kiosk to do so.

Further, the Eighth Circuit has made it clear that prisoners do not have a constitutional right to a prison grievance procedure. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (no claim when "various defendants denied his grievances or otherwise refused to help him"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (no claim when defendants failed to timely and properly respond to a grievance). Thus, a prison official's failure to properly respond to a grievance, standing alone, is not actionable under § 1983. *Id.*

Next, Wilson maintains he submitted paper grievances to address more pressing issues, such as his request for a mask to prevent another COVID-19 incident. (ECF No. 43 at 2). However, he indicates his paper grievances were not answered or returned. *Id.* Wilson argues he submitted multiple handwritten grievances and none were answered or returned. *Id.* at 3. He questions the Defendants' inability to locate them and suggests Defendants have withheld documents from him. *Id.* Wilson argues he did "all, and filed all, I could pertaining to administrative remedies" with respect to his claims. *Id.* He also argues while he was in cell DT-2 he was denied grievances and had no access to electronic filing.[1] *Id.*

The positions of the parties are diametrically opposed. The Court is not free to judge the credibility of the opposing statements. "Indeed, if the credibility of a critical *interested* witness

---

[1] Wilson's statements are sworn to under penalty of perjury.

8

is even partially undermined in a material way by the non-party's evidence, summary judgment in favor of the party with the burden of proof should be denied." *United States v. Real Property Located at 3234 Washington Ave. N., Minn., MN*, 480 F.3d 841, 845 (8th Cir. 2007) (citation omitted). Given Wilson's sworn statement that he submitted handwritten grievances regarding each of his claims, the Court concludes that a genuine issue of material fact precludes summary judgment in Defendants' favor on the issue of exhaustion of remedies.

### IV.   CONCLUSION

For these reasons, it is recommended that the Defendants' Motion for Summary Judgment (ECF No. 30) and Defendants' Supplemental Motion for Summary Judgment (ECF No. 38) be **DENIED.**

**Status of the Referral:   This case should remain referred for all matters not recommended for dismissal in this Report and Recommendation.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of June 2024.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE